UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YIESA JONES,<br><br>                Plaintiff,<br><br>   v.<br><br>LELAND DUDEK, Acting Commissioner of Social Security,[1]<br><br>                Defendant. | Case No. 1:21-cv-01414-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 17, 21, 22) |

## INTRODUCTION

Plaintiff Yiesa Jones ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits under Title II of the Social Security Act. The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations. (Docs. 17, 21, 22.) Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") was not supported by

---

[1] Leland Dudek became the Acting Commissioner of Social Security in February 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted for Kilolo Kijakazi as Defendant in this suit.

1

substantial evidence in the record and was not based upon proper legal standards. Accordingly, this Court will recommend reversing the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff applied for Title II Disability Insurance Benefits on November 28, 2018, alleging that she became disabled on September 15, 2018. AR 179-82.[2] The claim was denied initially on January 3, 2020, and on reconsideration on April 29, 2020. AR 99-103, 107-112. Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Karen B. Kostol held a hearing on January 4, 2021. AR 34-67. ALJ Kostol issued an order denying benefits on the basis that Plaintiff was not disabled on March 3, 2021. AR 12-33. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied. AR 1-6. This appeal followed.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 12-33. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 15, 2018. AR 18. The ALJ identified the following severe impairments: major depressive disorder; anxiety disorder; post-traumatic stress disorder (PTSD); hypertension; mild intermittent asthma; compression of median nerve; and ulnar neuritis. *Id.* The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 19.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the nonexertional limitations that Plaintiff must avoid concentrated exposure to irritants such as fumes,

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

odors, dusts and gases; was capable of frequent fingering and handling with the bilateral upper extremities; was capable of simple, routine and repetitive tasks in a low stress job, which is defined as having only occasional decision making requirements and only occasional changes in the work setting; was capable of performing jobs that require no fast paced production requirements such as fast paced assembly line work or high volume piecemeal quotas; and was capable of no interaction with the general public and only occasional interactions with co-workers and supervisors such that she is capable of working with things rather than people.  AR 21.  The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "medical opinion(s) and prior administrative medical finding(s)."  AR 21-26.

The ALJ found that Plaintiff was unable to perform any past relevant work, that Plaintiff was a younger individual on the alleged onset date, Plaintiff had a limited education, and that transferability of job skills was not material to the disability determination.  AR 26-27.  Given Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  AR 27.  The ALJ noted that examples of jobs consistent with Plaintiff's age, education, work experience, and residual functional capacity included: (1) Housekeeper (DOT No. 323.687-014, light exertional level, with 134,000 jobs in the national economy); (2) Janitor/Cleaner (DOT NO. 381.687-018, medium exertional level, with two million jobs in the national economy); and (3) Garment Folder (DOT No. 789.687-066, light exertional level, with 230,000 jobs available in the national economy).  AR 27-28.  The ALJ therefore concluded that Plaintiff had not been disabled from the alleged onset date of September 15, 2018, through the date of the decision.  *Id.*

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff argues that the ALJ erred as the jobs identified by the vocational expert at Step Five had requirements that exceeded Plaintiff's RFC. (Doc. 17 at 9-10, Doc. 22 at 1-2.) Plaintiff further argues that the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's subjective symptoms. (Doc. 17 at 11-14, Doc. 22 at 2-3.)

   **A. Plaintiff's Subjective Complaints**

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

4

1    Plaintiff contends that the ALJ committed harmful error by failing to provide clear and
2 convincing reasons for rejecting Plaintiff's testimony. (*Id.*) In deciding whether to admit a claimant's
3 subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995,
4 1014 (9th Cir. 2014); *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant
5 must produce objective medical evidence of her impairment that could reasonably be expected to
6 produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant
7 satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's
8 testimony regarding the severity of her symptoms only by offering specific, clear and convincing
9 reasons for doing so. *Id.* at 1015.

10   Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be
11 expected to cause the alleged symptoms. AR 22. However, the ALJ discounted Plaintiff's statements
12 concerning the intensity, persistence, and limiting effects of those symptoms, noting that the
13 statements were not consistent with medical evidence and other evidence in the record. *Id*. The ALJ
14 was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's
15 subjective complaints.

16   First, the ALJ found that Plaintiff's allegations were not fully consistent with the medical
17 records. AR 22-25. Although lack of supporting medical evidence cannot form the sole basis for
18 discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676,
19 681 (9th Cir. 2005).

20   Here, the ALJ summarized Plaintiff's allegations as follows:

> [Plaintiff's] claim for disability has two distinct components. The first part deals with the claimant's physical abilities to perform work-related activities despite having multiple diagnoses. The second component is related to the claimant's overall mental health condition and how it relates to her ability to mentally sustain work-related activities on a regular and continuing basis

25 AR 22. Regarding Plaintiff's physical abilities, the ALJ wrote:

> The record shows that the claimant has a history of musculoskeletal pain, hypertension and asthma, but there is no evidence of any significant and/or debilitating findings since the alleged onset date. For example, on July 17, 2019, the claimant was examined due to

5

complaints of loss of sensation in the non-dermatomal distribution in the hands, exacerbated by repetitive activities of the hands (Exhibit 2F/9). Examination findings documented "cutting" scars to the right wrist, and her Cozen test was positive in bilateral extremities (Exhibit 2F/10). Dr. Cody assessed the claimant with medical arm pain, essential hypertension, mild intermittent asthma, ulnar neuritis, compression of the median nerve at multiple levels, and GERD (Exhibit 2F/10-11). A wrist brace for the bilateral extremities was prescribed and she was also provided prescriptions for Clonidine Gabapentin and Omeprazole (Exhibit 2F/11).

Upon exam in August 2019, progress notes from St. Agnes Medical Center indicated that the claimant was assessed with bilateral upper extremity neuropathy and chronic hand pain but she was advised to merely continue taking her prescribed dosage of Gabapentin along with Tylenol/Ibuprofen should symptoms persist (Exhibit 13F/1).

In January 2020, Dr. Thiesen, DO, noted the following claimant's history of present illness:

33 y/o female presents c/o LUE pain and swelling x 4 days. She describes the pain as throbbing/achy in nature. Pt reports that she was referred from her PMD today to rule out blood clot. Pt denies hx of blood clots. Denies recent surgery. Denies blood thinner use. Additional sx includes mild, intermittent chest pain, however denies chest pain at this time. Denies SOB (Exhibit 7F/2).

Physician notes revealed that the claimant's oxygen saturation was at 100%. Her heart was of a regular rate and rhythm and her lungs were clear to auscultation with non-labored respirations. The claimant also exhibited a normal speech and moved all extremities at baseline (Exhibit 7F/3). Furthermore, the claimant underwent a chest x-ray which was unremarkable with no acute pulmonary disease witnessed. The claimant was, however, again assessed with hypertension (Exhibit 7F/7).

A Doppler ultrasound study of the left upper extremity (January 10, 2020) showed no evidence of venous thrombus. The veins demonstrated appropriate phasicity of flow, as did the left innominate and subclavian vein(s) (Exhibit 7F/8). Objective signs and findings such as these, as well as contained throughout the record, along with her conservative treatment, do not support the severity of the claimant's allegations regarding her physical impairments. There is simply no evidence of any recent treatment or significant complaints identifiable in the record with respect to the severe physical impairments listed above. Furthermore, while the undersigned does appreciate the claimant's history of neuropathy and occasional hand pain, the record contains no recent

>   EMGs or other radiographic imaging and her physicians merely recommended that she continue with her prescribed medication.
>
>   Based on the medical evidence of record discussed above, the undersigned finds that the claimant's allegations as to the intensity and limiting effects of her physical impairments are not fully consistent with the medical evidence of record and certainly do not preclude her from performing the limited range of work activity prescribed in the residual functional capacity.

AR 23-24. Regarding Plaintiff's mental health conditions, the ALJ wrote:

>   Turning more specifically to the claimant's mental impairments, examination findings from physicians and other treating sources have essentially shown normal mental functioning with no significant restrictions from a mental health standpoint since the alleged onset date. More specifically, the record shows that in August 2017, the claimant was examined at Exodus Recovery Crisis Stabilization Center after calling 911 stating that she was suicidal. The claimant reported suicidal thoughts due to recent stressors of being homeless, her husband working nights, and due to the passing of her mother. The claimant was initially verbally aggressive but quickly de-escalated as she calmed down. Upon exam, the claimant was fully oriented with a normal speech and thought process. Her insight and judgment were intact and her affect was appropriate. The claimant also denied perceptual disturbances/hallucinations. Upon discharge, the claimant was calm and cooperative and stated that she was no longer suicidal, just overwhelmed. She stressed a desire to go home so that she could spend time with her family (Exhibit 10F/1-4).
>
>   Upon a follow up visit in September 2018, the claimant stated, "I finally found medication that worked for me, they work wonders and I am sleeping better, no anxiety attacks." The claimant reported that her auditory and visual hallucinations were gone and that her appetite, energy and ability to focus were improving. Dr. Gill noted that the claimant was fully oriented and cooperative and that her mood and affect were in the average range. The claimant's cognition, speech, insight and judgment were also within normal limits as she evidenced an organized thought process throughout the examination (Exhibit 1F/22).
>
>   In January 2020, medical records indicated that the claimant was again cooperative with an appropriate mood and affect (Exhibit 7F). Also, upon a psychiatric evaluation in January 2020, the claimant was noted to be well groomed, alert, and oriented x4. Her motor activity was normal, as was her cognition, speech (goal directed), sensorium and thought processes. She denied any homicidal/suicidal ideations but did endorse worrying about her health and finances. The claimant was assessed with

7

> a history of PTSD, depression, major, recurrent, in partial remission, and anxiety. The claimant was noted to be in stable condition and her prescribed medication was adjusted accordingly (Exhibit 5F/1-5).
>
> More recently, in October 2020, the claimant reported that she was doing better with her psychotropic medication, but still endorsed occasional panic attacks. She added that she routinely stays at home and helps her children with their homework. She stated that she was "smoking less," and sleeping better (approximately 8 hours/night). The claimant also reported that she was willing to cut her Klonopin in halves and to try Buspirone before leaving the house to combat her anxiety. She again denied any AVH or homicidal/suicidal ideations (Exhibit 6F/2). There is no evidence of any further documented mental health treatment present in the record since October 2020.
>
> In addition, although medication compliance and counseling appear to attenuate the claimant's condition, her symptoms continue to wax and wane. The evidence indicates strong psychological underpinnings to her physical condition and her somatic focus serves to magnify mental health symptoms, thereby impinging upon sustainability/stress tolerance. However, due a lack of significant treatment/complaints, there are no documented findings that support a finding of disability.

AR 24-25.

Here, the ALJ appropriately contrasted the relatively normal examination findings with Plaintiff's more extreme allegations regarding her mental health conditions. *See* AR 336 (September 2018 medication progress note noting normal findings related to appearance, behavior, motor activity, sensorium, cognition, speech, orientation, thought processes, mood, affective range, intelligence, and insight and judgment); 563 (January 2020 physician note noting psychiatric findings as "Cooperative, appropriate mood & affect"); 615 (August 2017 crisis stabilization center inter-disciplinary intake/screening form noting that Plaintiff had reported being suicidal and that she was "initially verbally aggressive but quickly was deescalated by the… team and is calm & tearful at this time" and checking normal initial mental status findings for orientation, speech, motor, thought process, insight, judgment, affect, behavioral, thought content, perceptual, and ideation). The ALJ also similarly contrasted the examination findings with Plaintiff's physical impairment allegations. *See* AR 562 (January 2020 physician note regarding complaints of "throbbing/achy" left upper extremity stating that Plaintiff denied history of blood clots, denied recent surgery, denied blood thinner use, and though Plaintiff reported mild intermittent chest pain she denied chest pain or shortness of breath at

1  the time of the examination); 568 (January 2020 Doppler ultrasound report noting normal
2  compressibility of veins and appropriate augmentation of flow within left upper extremity veins).  The
3  ALJ therefore appropriately examined the medical evidence as one factor in discounting Plaintiff's
4  symptoms testimony.

5  Second, the ALJ wrote that given Plaintiff's "reported activities of daily living (basic
6  household chores, recent work activity at a dine-in restaurant, occasional grocery shopping, etc.)
7  (Exhibit 7E and Hearing Testimony), the undersigned has more than accommodated for her physical
8  impairments with the previously mentioned additional nonexertional limitations."  AR 24.  The ALJ
9  also later noted that "claimant's reported activities of daily living and detailed testimony demonstrates
10 her ability to concentrate and to appropriately interact with others."  AR 25.  An ALJ may properly
11 discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency
12 between what the claimant can do and the degree that disability is alleged.  *Molina v. Astrue*, 674 F.3d
13 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities
14 inconsistent with the alleged symptoms"), superseded by regulation on other grounds.  Even where a
15 plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the
16 claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.  *Id.*
17 at 1113.

18 However, the Ninth Circuit has cautioned that a claimant's ability to complete minimal daily
19 activities does not detract from the claimant's credibility.  *See Cooper v. Bowen*, 815 F.2d 557, 561
20 (9th Cir. 1987) ("evidence that [claimant] could assist with some household chores was not
21 determinative of disability. 'Disability does not mean that a claimant must vegetate in a dark room
22 excluded from all forms of human and social activity.'") (quoting *Smith v. Califano*, 637 F.2d 968,
23 971 (3d Cir. 1981)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has
24 repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as
25 grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her
26 credibility as to her overall disability.").

27 Here, some of Plaintiff's daily activities – basic household chores and occasional grocery
28 shopping – are the same as those the Ninth Circuit has cautioned against using to discredit symptoms

testimony. *Id.* Moreover, an examination of the evidence cited by the ALJ indicates that Plaintiff's activities were more limited than the ALJ suggested. In testifying regarding her past restaurant job, Plaintiff's testimony suggested that she could not cope with her anxiety and panic attacks at work and took regular additional breaks to attempt to deal with those conditions. *See* AR 51 (in testifying regarding past restaurant job, Plaintiff stated that she needed additional breaks because of her condition and said that her manager would allow her "those extra breaks and I would sit out back in the alley and I would cry until I got myself together, and I'd get back in there"); 52 (in testifying regarding past restaurant job, Plaintiff said that she "I constantly have to call in and I was constantly required to bring in doctors' notes so that I would not be terminated."); 52-53 ("The job was simple. I was to wash dishes and I was to bus tables. It was the being around people. I stay home every single day. I cannot be around people, but I wanted to try, and I, I gave it all I could. And the hustle and bustle and all of the customers and all the coworkers on top of everything… And during the day working around so many people it just made my anxiety worse and that's why I develop paranoia."). Additionally, the ALJ cited Plaintiff's self-reports as demonstrating Plaintiff's abilities, but the evidence instead indicates that Plaintiff's capacities are minimal. AR 260 (Plaintiff wrote that she needed reminders to take care of personal needs and to take her medication, that she would only prepare a meal of toast or a sandwich one to two times per week and that "My spouse and children do all of the laundry and cleaning… I don't do any chores"); 261 (Plaintiff wrote that she would shop "once every 2-3 months… I'm only able to withstand being in a store full of people for maybe 20-30 minutes"). As Plaintiff's reported daily activities appear to be minimal, they are not a proper basis for discounting Plaintiff's symptoms testimony. *Vertigan*, 260 F.3d at 1050.

Third, the ALJ noted that, "for her mental impairments, the claimant received minimal and sporadic mental health treatment throughout the relevant period, with records reflecting little more than a conservative regimen of psychotropic medication with no evidence of any significant psychotherapy" and that there was "little evidence to suggest that the claimant had any significant complications associated with said conditions that were intractable in nature, precluding all work activity." AR 22-23. The ALJ further wrote that "While the claimant has been diagnosed with several physical impairments, she has received the proper conservative treatment with signs of

improvement…" AR 24. The ALJ also cited Exhibit 6F in demonstrating that "while the claimant has experienced symptoms associated with depression, PTSD and anxiety, recent findings indicate that she had shown improvement via prescribed medication." AR 25.

An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."); *see also* 20 C.F.R. § 404.1529(c)(3)(iv), (v) (medication effectiveness and treatment history are relevant factors for evaluating a claimant's symptom testimony). Yet, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Block v. Berryhill*, No. 2:16-cv-2230-EFB, 2018 WL 1567814 at *5 (E.D. Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F.Supp.3d 1211, 1220 (D. Or. 2015); *see also Wheeler v. Kijakazi*, No. 1:21-cv-1225 JLT-BAM, 2023 WL 4146215, at *4 (E.D. Cal. June 23, 2023).

Furthermore, in evaluating social security claims involving mental health issues, courts have found that medication prescriptions may indicate that the treatment was not conservative. For instance, the Ninth Circuit held that an "ALJ improperly characterized [a claimant's] treatment as 'limited and conservative' given that she was prescribed a number of psychiatric medications." *Drawn v. Berryhill*, 728 F. App'x 637, 642 (9th Cir. 2018). While courts have differed on what medications constituted conservative treatment, they have clarified that some prescription medications and the adjustment of those prescriptions indicated that the treatment was not conservative. *See Armando R. E. v. Kijakazi*, No. 2:22-CV-02907-GJS, 2023 WL 3292855, at *5 (C.D. Cal. May 5, 2023) (holding that the ALJ improperly relied on conservative treatment to discount Plaintiff's symptoms testimony where the record reflected multiple psychiatric prescriptions including Klonopin and modifications of said prescriptions); *Saltzman v. Comm'r of Soc. Sec.*, No. 2:18-CV-2215-DMC, 2019 WL 6683130, at *14 (E.D. Cal. Dec. 6, 2019) (finding that plaintiff's treatment "has not been conservative" where plaintiff's "mental health treatment involves powerful prescription medications

[such as bupropion, Abilify, and Klonopin], which doctors continually adjust due to side effects and varying effectiveness").

Here, the ALJ does not address which additional, more aggressive treatment options would be available to Plaintiff. AR 21-25. While the ALJ noted that Plaintiff's treatment reflected "little more than a conservative regimen of psychotropic medication with no evidence of any significant psychotherapy," it is unclear why the ALJ believes that psychotherapy would be a more aggressive treatment option than psychotropic medication. AR 22-23. The ALJ therefore improperly relied on conservative treatment as a basis for discounting Plaintiff's testimony. *Block*, 2018 WL 1567814 at *5.

Additionally, the evidence cited by the ALJ to demonstrate that Plaintiff's conditions were effectively controlled through medication is undermined by the record. For instance, the ALJ cites a September 2018 report in which Plaintiff reported that she had "finally found medication, that worked for me, they worked wonders, I am sleeping better no anxiety attacks." AR 24, 336 (also noting past history of "suicide attempts/SIB hx of one suicide attempt in 2017 by overdose" and that previous medications included Prozac, Buspar, Paxil, Zoloft, Trazodone, and Abilify). In that September 2018 visit, Plaintiff reported that she rated her anxiety as "2/10," denied any panic attacks in the past month, and that her focus was "awesome." *Id.* However, the record also includes a subsequent visit report from December 2018 in which Plaintiff reported that her "anxiety has come back, I think the medication is not working again, I am back in bed, I don't feel like cooking, not walking my kids to school" and reported "that she is not able to do 'normal things' as her anxiety is worse again for no identifiable reason." AR 331 (Plaintiff also reported: "my chest gets tight, I start to have shakes, it is hard to breathe, my heart is beating hard, sometimes I feel like I am about to pass out."). Given the adjustments to Plaintiff's prescriptions and indication that Plaintiff's panic attacks and anxiety had increased just three months after Plaintiff had apparently found the correct prescription, it is difficult to conclude that her conditions were effectively or conservatively controlled. *Armando R.E.*, 2023 WL 3292855, at *5; *Saltzman*, 2019 WL 6683130, at *14.

The ALJ also cites an October 2020 report in which Plaintiff informed the physician that she was "doing better with the medications," but the ALJ omits the remainder of the finding, in which

1  Plaintiff reported "I am doing better with the medications but I still have panics, anxiety and I isolate
2  at home and don't go out much…" and the report notes that Plaintiff "Still has anxiety and is willing
3  to cut the Klonopin in halves and try buspirone before leaving the house." AR 492.  While Plaintiff
4  denied "any AVH… SI or HI," the report noted that Plaintiff had paranoia.  *Id.*  Considering that
5  Plaintiff was still experiencing panic attacks, anxiety, refrained from going out and interacting with
6  others, and her medications were adjusted at various points, the evidence cited by the ALJ does not
7  demonstrate that Plaintiff's conditions were effectively controlled by conservative treatment.
8  *Armando R.E.*, 2023 WL 3292855, at *5; *Saltzman*, 2019 WL 6683130, at *14.  The ALJ therefore
9  erred in relying on conservative treatment or effective treatment by medication as a basis for
10 discounting Plaintiff's symptoms testimony.

11 Fourth, the ALJ notes that "As for her mental impairments, the claimant received minimal and
12 sporadic mental health treatment throughout the relevant period, with records reflecting little more
13 than a conservative regimen of psychotropic medication with no evidence of any significant
14 psychotherapy." AR 22-23.  An ALJ may consider "unexplained or inadequately explained failure to
15 seek treatment or to follow a prescribed course of treatment" in credibility evaluations.  *Tommasetti v.*
16 *Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  However, the record includes many reports from 2017
17 through 2020 in which Plaintiff sought mental health treatment and relevant medications.  *See* AR
18 315-349 (approximately ten mental health visit reports from March 30, 2017 through November 15,
19 2019 related to Plaintiff's mental health concerns); 412-438 (2019 prescription refill requests and visit
20 reports); 481 (January 2020 visit report noting Plaintiff was there for medication refills and to update
21 her psych evaluation and stating "Last suicidal attempt was 2 weeks ago by overdose but escaped
22 harm."); 492 (October 2020 visit report in which Plaintiff reported still experiencing anxiety and panic
23 attacks).  This history does not indicate a failure to seek treatment or failure to follow a prescribed
24 course of treatment, but instead suggests Plaintiff was attempting to better manage her conditions and
25 medication.  Failure to seek treatment was therefore not an appropriate basis for discounting Plaintiff's
26 symptoms testimony.

27 Defendant argues that Plaintiff's mental health treatment and psychiatric medication use was
28 intermittent and lacked a history of psychiatric hospitalization or residential psychiatric treatment,

13

citing *Meanel v. Apfel*. (Doc. 21 at 8.) However, Defendant does not cite to authority demonstrating that a claimant must be hospitalized or more regularly seek medical intervention. Indeed, in the case cited, the Ninth Circuit only held that the ALJ was entitled to reject testimony that a claimant "constantly experienced pain comparable to 'being burned'" where the claimant's doctor failed to prescribe, and the claimant failed to request, "any serious medical treatment for this supposedly excruciating pain." *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999), *as amended* (June 22, 1999). In contrast to the *Meanael* claimant's failure to request any serious medical treatment, Plaintiff here continually requested medication refills and sought medication modifications. *See* AR 315-49; 412-38; 481; 492. Defendant's argument that the ALJ properly used a failure to seek treatment as a basis for discounting Plaintiff's testimony is therefore unavailing.

As the ALJ failed to utilize or articulate proper bases for evaluating Plaintiff's symptoms testimony beyond the lack of supporting medical evidence, the ALJ erred in assessing Plaintiff's symptoms. *Burch*, 400 F.3d at 681.

**B. Remedy**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted). On remand, the ALJ should specifically address Plaintiff's symptoms testimony.

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument that the ALJ erred at Step Five. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's]

alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised.").

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED;

2. The agency's determination to deny benefits be REVERSED; and

3. The Clerk of this Court be directed to enter judgment in favor of Plaintiff Yiesa Jones and against Defendant Leland Dudek, Acting Commissioner of Social Security.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered**. The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 27, 2025**            /s/ *Barbara A. McAuliffe*
                                UNITED STATES MAGISTRATE JUDGE